# UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

DAVID A. STEBBINS                                                    **Appellant**

**VS.**                                  **CASE NO. 13-2689**

**WES BRADFORD,**
**STATE OF ARKANSAS**
**BOONE COUNTY CIRCUIT COURT,**                          **DEFENDANT**
**CHAMBERS OF GORDON WEBB, AND**
**DAVID D. STEBBINS**

## APPELLANT BRIEFING

Comes now, *pro se* Appellant David Stebbins, who hereby submits the following

Appellant Briefing in support of his appeal.

1. TABLE OF CONTENTS                                              1

2. TABLE OF AUTHORITIES                                           3

3. JURISDICTIONAL STATEMENT

    (a) Basis for District Court's Jurisdiction.

    (b) Basis for Court of Appeals' Jurisdiction.

    (c) Timeliness of appeal

    (d) Finality of judgment

4. STATEMENT OF ISSUES

5. STATEMENT OF THE CASE

6. SUMMARY OF ARGUMENT

7. ARGUMENT

    (a) Appellant's lawsuit filings are
        protected by the First Amendment.

    (b) Strict scrutiny demands that Appell-
        ant's court access only be prospect-

ively restricted upon full due process,
including trial by jury of his peers.

(c) The District Court's finding that
Appellant's lawsuit-filings were
vexatious and abusive is in clear error.

(d) Appellant always tries to consult
with legal counsel before filing
a suit.

(e) Appellant only sues when he has
been wronged.  If said wrong is
rectified without litigation, Appellant
will not sue.

(f) Precedent used by the District
Court is far more severe than
anything Appellant has even
arguably done.

(g) Even if restrictions are appropriate,
the restrictions given are far too harsh
and have the disparate impact of depri-
ving Appellant of court access altogether.

(h) The District Court should not
have dismissed the action with
prejudice when Appellant's mistake
was simply not including enough
facts to satisfy the Court.

8.  STANDARD OF REVIEW

9.  CONCLUSION

# TABLE OF AUTHORITIES

**Statutes & Rules**                                                      **Page**

42 USC § 1983

28 USC § 1291


**Case Law**                                                              **Page**

# JURISDICTIONAL STATEMENT

For the reasons set forth below, this Court has jurisdiction over this appeal.

## Basis for District Court's Jurisdiction.

The District Court had jurisdiction over the underlying dispute, pursuant to 42 USC § 1983.

## Basis for Court of Appeals' Jurisdiction.

This Court has jurisdiction to hear this appeal. See 28 USC § 1291.

## Timeliness of appeal

This appeal was filed less than thirty days after the order set forth below was entered.

## Finality of judgment

This appeal is being brought of a final judgment.

# STATEMENT OF ISSUES

1. Does Appellant have the First Amendment right to file good faith lawsuits, even if they ultimately fail?

2. Does Appellant have a history of "vexatious and abusive" litigation practices?

3. If he does, do the severity of his practices warrant such severe sanctions?

4. Should the complaint have been dismissed with prejudice simply because Appellant did not give as much detail as the District Court would have liked, or should he have been given the opportunity to amend his complaint and make a more definite statement?

## STATEMENT OF THE CASE

1.  The Magistrate James R. Marchewski, in an attempt to rid himself of a minor annoyance, entered a Report & Recommendation suggesting that Plaintiff be barred from filing any more lawsuits in the U.S. District Court for the Western District of Arkansas, simply on the grounds of how many lawsuits he has already filed.  He even admitted that a few of those lawsuits had passed the Court's *sua sponte* scrutiny under 28 USC § 1915.

2.  Appellant quickly filed an objection to the Report & Recommendation, arguing, among other things, the following:

    (a)  The quantity of lawsuits, by itself, does not automatically amount to abuse of the legal system.

    (b)  The individual merit, and good faith behind the filing of, each lawsuit must be taken into account.

    (c)  Simply because a claim fails does not mean that it is frivolous or that it was filed in bad faith.

    (d)  Appellant has the right to access the courts.

3.  The District Court judge P.K. Holmes subsequently entered an order adopting the Magistrate Judge's Report & Recommendation in its entirety, finding, among other things, the following:

    (a)  The good faith behind Appellant's filings were legally irrelevant.

    (b)  Appellant has filed "ultimately meritless" claims.

    (c)  The mere fact that Appellant has filed claims that have failed is enough to warrant restrictions on future court access.

    (d)  Appellant had living expenses of $457.58.

4.  Judge Holmes then proceeded to order that Appellant not be allowed to file any more *pro se* lawsuits except once every three months and only if he posts a $100 refundable bond.

5.  Judge Holmes also dismissed this lawsuit, and did so with prejudice, simply because he was unsatisfied with the amount of detail in the Complaint.

6.  This appeal ensued.

## SUMMARY OF ARGUMENT

1.

## ARGUMENT

For all of the foregoing reasons, the decision of the District Court to impose restrictions on Plaintiff's future court access should be reversed.

### Without bad faith, Appellant's lawsuits are protected by the First Amendment.

1. The District Court acknowledged that Appellant's lawsuits were probably filed in good faith, but decided to restrict his court access anyway, simply because he has filed what the District Court considers to be "ultimately meritless claims," and felt that this was alone sufficient to warrant imposing restrictions on his future court access.

2. Appellant is astonished that the District Court would actually consider this to be legally relevant.

3. Plaintiff has the right – both under the Due Process Clause, as well as the First Amendment – to access to the courts. See *Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731, 741, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983) ("[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances."); see also *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972) ("The right of access to the courts is indeed but one aspect of the right of petition."); see also *Monsky v. Moraghan*, 127 F.3d 243, 246 (2d Cir.1997) ("It is well established that all persons enjoy a constitutional right of access to the courts.").

4. The Supreme Court has declined to extend this First Amendment protection to *baseless* litigation (see McDonald v. Smith, 472 U.S. 479, 484, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1985)); however, this precedent, on its face, only applies to litigation filed specifically in bad faith or in reckless disregard to the lack of merit. Courts must remain "sensitive to

the need for the courts to remain open to all who seek in good faith to invoke the protection of law. A[ court filing] that lacks merit is not always — or often — frivolous." See Crain v. CIR, 737 F. 2d 1417, 1418 (5th Cir. 1984). Sanctions and restrictions should only be imposed in response to a filing "designed ***only*** to delay, obstruct, or incapacitate the operations of the courts or any other governmental authority." See *id*. An important keyword there is "only," which was bolded, underlined, and italicized for emphasis; if a litigant truly feels that he has been wrong, he should be free to be free to petition the judiciary for a review of his situation without fear of persecution by governmental authorities.

5. Forget the Fifth Circuit; even the *Supreme* Court has made a clear distinction on this issue:

> "[I]t is evident that the failure-to-state-a-claim standard of Rule 12(b)(6) and the frivolousness standard of § 1915(d) were devised to serve distinctive goals, and that while the overlap between these two standards is considerable, it does not follow that a complaint which falls afoul of the former standard will invariably fall afoul of the latter." See *Neitzke v. Williams*, 490 US 319, 326 (1989).

6. Since this case was published, Congress has passed an amendment to 28 USC § 1915 that allows District Courts to dismiss an action before service of process simply for failure to state a claim under Rule 12(b)(6). However, this Act of Congress, on its face, only applies to pre-service dismissal of just the one case in question. But when you're dealing with the imposition of restrictions on future court access, the distinction set forth above still applies full force.

7. Therefore, where the District Court flatly admits that Appellant's lawsuits were filed in good faith[1], but decides to impose sanctions anyway, then the District Court has heavily infringed upon Appellant's most fundamental and basic constitutional rights, a violation

---

1    A finding which is not being challenged on appeal; in fact, the exact opposite finding of the Magistrate Judge is what is being challenged. Therefore, this Court has no subject-matter jurisdiction to disagree with this finding.

which is completely and utterly inexcusable and should be reversed with gusto.

**Strict Scrutiny forbids summary imposition of restrictions.**

8. Because Appellant's right of access to the courts is governed by strict scrutiny, that means that the judiciary should only be allowed to *summarily* restrict Appellant's court access is there exists no means of deterring frivolous litigation that are less restrictive on Appellant's other fundamental rights.

9. That's how strict scrutiny works:  "To satisfy strict scrutiny, the [government] must demonstrate that its [law which restricts a fundamental right] is **narrowly tailored** to achieve a compelling interest." See *Miller v. Johnson*, 115 S.Ct. 2475, 2490 (1995). "Narrowly tailored" means that there cannot be any other means that also intrude upon fundamental rights.

10. Here, the accusation that Appellant has abused the legal system was never submitted to a jury, nor did Appellant have a full opportunity to submit evidence of his own, nor was counsel ever appointed.  In short, it was a *summary* imposition of restrictions.

11. This means that Appellant's rights under the Fifth and Sixth Amendments have been infringed upon, which entitles Appellant to full due process in the face of all accusations made by the government. The District Court's order should therefore be vacated, with instructions to actually *try* appellant for abusing the legal system, complete with appointed counsel, full discovery, and trial by jury of Appellant's peers (which would include cross examination of witnesses).  If convicted, Appellant can be made to compensate the Court – who would be considered the victim of Appellant's crime – for the costs Appellant's abuse has caused it, in the form of restitution.

12. Such a process would suffice to protect the Court from an abuse of its resources, while at

the same time minimizing the risk that these restrictions would be imposed upon litigants who actually do not deserve it (as will be discussed below) by taking the ultimate decision of whether or not an abuse has occurred out of the hands of an emotionally-charged and personally-involved judge, and giving it to twelve citizens who equally detest frivolous lawsuit filers (as demonstrated by public outrage to news articles which document frivolous filings), yet who have no personal involvement in the case (which is the main reason why juries are so preferred) and thus are willing to give those who are accused of such their proverbial "day in court."

13. Of course, since the request for full due process is wishful thinking on Appellant's part, even though the Constitution entitles him to it, Appellant will nevertheless proceed with arguing why the District Court's finding of abuse was erroneous.

**All of Appellant's lawsuits were filed in good faith.**

14. Although Appellant's litigation history may be quantitatively massive, it was never intended to be vexatious. They were actually filed in good faith.

15. Appellant's lawsuits were filed in reaction to various parties doing wrong against the Appellant. Appellant was unable to afford representation by attorneys, and many of the cases were not slam dunks, leading Appellant to have only two options: Representing himself, or letting the people get away with what they did to Appellant. The latter was completely out of the question, Appellant quickly decided, because he refuses to be ANYONE'S whipping boy.

16. The *quantity* of lawsuits was not filed out of a vexatious attempt to harass anyone or abuse the legal system. Nor was it caused by Appellant holding an extremely lenient standard of what constitutes a "legal wrong." No, it was caused because Appellant has a

unique condition which makes him especially susceptible to torts: His Asperger Syndrome.

17. This Asperger Syndrome makes it extremely difficult for Appellant to converse with others in a sociable manner. In fact, the only reason he can thrive in a legal environment is because it is an extremely esoteric, and also extremely logical, detailed, and precise world.

18. This causes Appellant to often be discriminated by persons, not because they simply do not care (though Jason Jones, one of the Defendants in Case No. 12-3022 in the U.S. District Court for the Western District of Arkansas, clearly is one of the people who don't care), but because they often do not quite understand what Aspergers is, and that Plantiff's supposed "attitude" and "obnoxiousness" cannot often be helped by Appellant.

19. Of course, just because they THINK they are doing good does not mean that their actions are legal. At best, their belief in the legality of their actions can relieve them of punitive damages liability; see *Kolstad v. American Dental Assn.*, 527 US 526 (1999), but it does not excuse them from liability in the first instance.

20. Despite the good faith presumed by a majority of the Defendants in Appellant's actions, Appellant simply cannot allow this conduct to go unchallenged. We are talking about Appellant's fundamental right to PARTICIPATE IN SOCIETY!!!

(a) Appellant sues so he can hopefully, one day, get off the welfare money and become a self-sustaining man, by means of *having a job*, NOT by means of simply sitting around his home and playing video games all day.

(b) Appellant sues to protect his right to enter a store and shop, helping the economy through consumption.

(c) Appellant sues so he can have a place to live (the main reason he sued Harp & Associates)... *while paying rent*.

(d) Recently, Appellant got finished with a lawsuit against the University of Arkansas. What was his goal in filing that lawsuit? To Harass? To make a quick buck? No, Appellant sued for the right to go to school and LEARN A SKILL, so that he would be better equipped to find employment!

21. In short, Appellant sues, not to harass, but simply so that he can *live his life*!!! Surely, that is worth filing a hundred lawsuits over, isn't it?

22. Appellant's point with all of this is that... while the quantity of lawsuits may be evidence of abuse of the legal system, this evidence is, at best, circumstantial. And the circumstances in Appellant's case show a total lack of *mens rea* when it comes to a desire to abuse the legal system.

**Appellant sues upon advice of counsel.**

23. The District court has allowed Appellant unlimited court access if he is represented by Counsel. In other words, they will accept that Appellant is filing in good faith – and thus, not vexatious – if an attorney vouches for said good faith.

24. The thing about that is … Appellant *does* consult with legal counsel before filing suit! He represents himself during the lawsuits themselves to save on costs, but he always makes an effort to obtain the endorsement of an attorney for his causes.

25. To support this, please find attached Exhibits A and B. These are email conversations Appellant had with other attorneys (other consultations were either over the phone, or in person, and thus cannot be attached here), where they advised Appellant that the lawsuits he wanted to file were valid and colorable causes of action.

26. By contrast, see Exhibit C, where an attorney advised Appellant that he stood no chance of winning an ADA discrimination lawsuit against a website, for the simple reason that Title III of the Americans with Disabilities Act, on its face, does not apply to websites. Thus, you will notice, of all the lawsuits Appellant has filed that appear on Pacer, not one of them was against a website for an ADA violation, due to the simple fact that Appellant knows, understands, and respects this unfair, but still very real, part of the law.

27. This evidence singlehandedly proves that, although Plaintiff may represent himself during the actual proceedings, he does so under the advice of counsel, which singlehandedly refutes the Magistrate Judge's argument that Plaintiff's lawsuits are vexatious and abusive.

**Appellant does not sue when he already has justice.**

28. To offer one final push in Appellant's favor, Appellant hereby attaches, as Exhibit D, an affidavit of one of Appellant's neighbors, a woman who had committed a tort – nay, a *felony* – against Appellant in the past. Appellant not only had a criminal conviction to help prove his case, but also a *confession* on her part, which she freely gave to the police due to her frivolous belief that she was acting in "self-defense." If Appellant had sued her, he would have gotten a crisp $25,000 in punitive damages, slam-dunk. However, he ultimately chose not to sue her. Why? Because she *learned her lesson* from the jail sentence she suffered!

29. This proves that Appellant only sues when other, less drastic remedies prove ineffective. This is not "abusing the legal system." In fact, it is the exact opposite.

30. For all these reasons and more, the District Court's allegation that Appellant is an abuser is without merit, and should be reversed.

**Precedent used by the District Court**
**is far more severe than anything**
**Appellant has even arguably done.**

31. In support of their claims, the Magistrate Judge used the precedents of *Zatko v. California*, 502 U.S. 16 (1991), *in re McDonald*, 489 U.S. 180 (1989), . *Martin v. District of Columbia Court of Appeals*, 506 U.S. 1, 2 (1992), and *Day v. Day*, 510 U.S. 1 (1993), while Judge P.K. Holmes invoked the precedent of *In re Tyler*, 839 F.2d 1290 (8th Cir. 1988).

32. However, to invoke these precedents as justification for issuing restrictions on Appellant's future court access is like using a steamroller to flatten bread dough. All of these cases invoked document actions and abuses far more severe than anything you could even pretend is present with Appellant.

33. For example, several notable differences between this case and the case of *Zatko v. California* are as follows:

   (a) …

        i. In the Zatko case, "34 of those filings have come within the last 2 years."

        ii. In this case, Appellant has not even filed 34 – or even *twenty*-four – different cases in his entire life.

   (b) …

        i. In the Zatko case, "Future similar filings from these petitioners will merit additional measures."

        ii. In this case, the measures are being taken automatically and prospectively.

   (c) …

        i. In the Zatko case, "As the dissent recognizes, for example, well over half of the

numerous *in forma pauperis* petitions filed since the beginning of this Term are best characterized as frivolous."

ii. In this case, the District Court acknowledges that many of Appell-ant's filings were done in good faith, but feels that they are entitled to impose restrictions, simply because the filings met their definition of "ultimately meritless."

34. Several notable differences between this case and the case of *in re McDonald* are as follows:

(a) …

i. In McDonald, "[Petitioner] has made 73 separate filings with the Court."

ii. In this case, Appellant has not made even a third that number of filings,

(b) …

i. In McDonal, "In the 13 years since his conviction became final, petitioner has filed numerous petitions and motions for relief in this Court and in the Tennessee courts, all of which have been rejected."

ii. Here, Appellant has not filed more than one case per defendant per cause of action.

(c) …

i. In McDonald, "Petitioner remains free under the present order to file in forma pauperis requests for relief other than an extraordinary writ, if he qualifies under this Court's Rule 46 and does not similarly abuse that privilege."

ii. Here, the District court seeks to bar Appellant's ability to file even regular lawsuits.

35. A few notable differences between this case and the case of *Martin v. District of*

*Columbia Court of Appeals* are as follows:

(a) …

    i. In Martin, "[he has] repeatedly made totally frivolous demands on the Court's limited resources."

    ii. Here, the District Court acknowledges that Appellant's filings were made in good faith.

(b) …

    i. "Martin's refusal to heed our earlier warning leaves us no choice."

    ii. Here, Appellant was never given any prior warning from the Court to correct his behavior. The Magistrate Judge's Report & Recommendation was slapped on Appellant without any warning.

36. A few notable differences between this case and the case of *Day v. Day* are as follows:

(a) …

    i. In Day, "… all of them demonstrably frivolous."

    ii. Here, the District Court acknowledges that Appellant's filings were made in good faith.

(b) …

    i. "Day's refusal to heed our earlier warning requires us to take this step."

    ii. Appellant was never given any prior warning from the Court to correct his behavior. The Magistrate Judge's Report & Recommendation was slapped on Appellant without any warning.

37. And finally, the case of *In re Tyler* has the most, and the most glaring, differences of all.

(a) …

     i.    In Tyler, "He has engaged in practices which have been abusive to this court and

           its personnel…" and "Mr. Tyler has … used foul and disgusting language, calling

           court staff, including deputy and assistant clerks, law clerks, secretaries,

           magistrates, and judges, racially derogatory names, hurled epithets, and otherwise

           utilized abusive language disrespectful of the court and all in his presence."

    ii.    Here, the closest you could argue that Appellant has come to abusing court

           personnel is when he asked what is there to stop a judge from simply never ruling

           on a motion, and instead of giving a straight answer, the law clerk simply dodged

           the question.  Appellant then become rightfully frustrated at his inability to get a

           straight answer and spoke with only 10% greater volume "What is there to STOP

           them?!" This happened only one time (as opposed to Tyler's case, where the Court

           uses the plural word "practices," implying a pattern), and Appellant actually had a

           reason for being so frustrated.

(b) …

     i.    In Tyler, the Petitioner "has caused unnecessary administrative expenses in the

           handling of his cases."

    ii.    The District Court has not even alleged – let alone shown evidence for – any act

           on Appellant's part which has burdened specifically the *administration* of the

           Court.  In fact, most of the Clerks of the District Court seem to LIKE Appellant.

(c) …

     i.    In Tyler, "Since January 1, 1986 (slightly more than two years before the date of

           that case's opinion), Mr. Tyler has filed 113 cases in this court in his own name as

           petitioner or plaintiff."

     ii. To say that Appellant has come even remotely close to filing this many lawsuits in that length of time is nothing short of laughable.

(d) …

     i. In Tyler, "the court further notes that in many cases Mr. Tyler has sought to appeal orders of the magistrate to the Eighth Circuit Court of Appeals, which is clearly not permitted; sought to appeal interlocutory orders of the trial judges to the Eighth Circuit Court of Appeals; and otherwise attempted to appeal nearly every disposition of his cases to the Eighth Circuit Court of Appeals."

     ii. Here, while Appellant may have indeed sought appellate review before such review was ripe, he has rarely made the same mistake twice, contrasted with Tyler's case, where this court used the exact words "many cases" to describe the situation.

(e) …

     i. "Mr. Tyler has on several occasions named parties as defendants … including Lil' Red Riding Hood."

     ii. Appellant, at the very least, files suits against real people!

(f) …

     i. "No attempt has been made in many of his complaints to make any specific allegations."

     ii. Appellant always tries to explain how every Defendant played a role in what Appellant considered to be a violation of his rights.

(g) …

     i. Tyler was restricted to filing one lawsuit each month.

      ii.  Appellant has been given three times as severe a restriction for what amounts to a fraction of the severity of the offense.

38. In addition to this, you will notice that every case cited which comes from the Supreme Court have dissenting opinions. Not one of the cited SCOTUS precedents were issued by a unanimous court. This means that the conditions which caused those those restrictions should be construed as the bare minimum level of abuse before prospective restrictions become even arguably appropriate.

39. The one precedent cited by the District Court that was unanimous was done in reaction to a pattern of abuse far exceeding anything you could even remotely claim Appellant is guilty of. To say that *in re Tyler* gives the Court authority to restrict Appellant's future court access in this case is like using the case of *Korematsu v. United States*, 323 U.S. 214 (1944) to justify a school lining up the whole school at gunpoint and performing involuntary full body cavity searches on all the children just to find ¼ ounces of cannibas. Tyler got those restrictions because he clearly was abusing the legal system, whereas Appellant got his restrictions because the District Court made the finding that Appellant has filed "ultimately meritless claims." It's ludicrous, and it's insulting to Appellant's dignity.

**Even if restrictions are appropriate, the restrictions given are far too harsh and have the disparate impact of depriving Appellant of court access altogether.**

40. Judge Holmes structured his restrictions on Appellant's future court access with an intention of allowing court access that is within his budget. However, his belief as to what was "within Plaintiff's budget" is entirely mistaken.

41. Judge Holmes believes that Appellant's living expenses are only $457 per month. To

reach this total, he counts only Appellant's rent and utilities, and absolutely nothing else. No food, no clothes, no nothing.

42. Appellant's food stamps only cover a portion of his food costs; Appellant's groceries tend to cost upwards of $150 per month. This means that the food alone takes up nearly every spare cent that Appellant does not spend on rent and utilities.

43. Food costs also do not cover clothing, stationary, or even cooking utensils or cleaning supplies.

44. So, as you can see, Appellant has a lot more living expenses than just $457 per month. Any sanctions against Appellant's future court access should be restructured so as to be within Appellant's budget[2].

45. Even the case of *in re Tyler*, which the District Court seems to love so much, acknowledges this truth on Page 1296 of that opinion:

"Mr. Tyler has no money. The records of this court contain documentation submitted by both Mr. Tyler and the appropriate official from the Nebraska State Penitentiary, disclosing that his prison trust account is for all practical purposes non-existent as a source of funds for him to pay any fee for filing cases in this court or elsewhere. Thus, it can be concluded that if he were to be prohibited from proceeding *in forma pauperis* in any case, his access to this court would be totally denied. In accordance with *Green v. White*, we reject this alternative as too strict a sanction to impose upon Mr. Tyler at this time."

46. Therefore, even if all of the above arguments ultimately prove unpersuasive to this court, the monetary restriction should still be restructured.

**The Complaint should not have been dismissed – let alone with prejudice – without Plaintiff getting an opportunity to amend his Complaint and clarify his positions.**

47. Turning to the merits of this case, the District Court dismissed this action with prejudice as being facially frivolous.

---

2   Appellant has filed a motion to amend judgment, suggesting that this restructured restriction be that the Appellant must seek consultation with legal counsel before filing suit, and must provide evidence thereof at the time of filing. However, Appellant has not yet heard back from the District court on this motion.

48. By "frivolous," he means more than merely that the case lacks merit. Again, it takes more than merely lacking merit to find a case to be frivolous:

"[W]hen a judge calls an argument 'ridiculous' or 'frivolous,' it is absolutely the worst thing the judge could say. It means that the person arguing the case has absolutely no idea of what he is doing, and has completely wasted everyone's time. It doesn't mean that the case wasn't well argued, or that judge simply decided for the other side, it means that there *was no other side.*. The argument was ***absolutely, positively, incompetent***. The judge is not telling you that you that you were 'wrong.' The judge is telling you that you are out of your mind."[3]

49. So, this Court must ask itself: "Was this lawsuit so incredibly incompetent that no one other than a malicious abuser of the court system could possibly think that his rights had been violated?" The answer is, very clearly, "no."

50. The District Court dismissed this action because it was not satisfied with the amount of detail given in Appellant's complaint. This, however, does not justify dismissal with prejudice. When reviewing a complaint to see if it states a claim upon which relief can be granted, "[a] complaint must be viewed in the light most favorable to the plaintiff and should not be dismissed merely because the court doubts that a plaintiff will be able to prove all of the necessary factual allegations." See *Fusco v. Xerox Corp.*, 676 F. 2d 332, 334 (8th Cir. 1982). Dismissal for failure to state a claim should be done "only if it appears beyond doubt that the plaintiff can prove no set of facts to warrant a grant of relief." See *Knieriem v. Group Health Plan, Inc.*, 434 F. 3d 1058, 1060 (8th Cir. 2006).

51. A mere lack of detail in the Complaint is not enough to warrant dismissal for failure to state a claim; at the very least, the dismissal should have been without prejudice, and Appellant given an opportunity to correct his mistake, as "[t]here is a strong policy favoring a trial on the merits and against depriving a party of his day in court." See *Sentis Group, Inc. v. Shell Oil Co.*, 559 F. 3d 888, 899 (8th Cir. 2009).

---

3   That excerpt comes from a legal treatise which can be viewed at the following weblink: http://evans-legal.com/dan/tpfaq.html#purpose

52. Therefore, the District Court's order dismissing this action should be vacated, with instructions to allow Appellant the opportunity to clarify his pleadings.

## Conclusion

53. To wrap up this argument, let us recap the points:

    (a) The District Court believes that future restrictions on Appellant's fundamental right of access to the courts is warranted simply because Appellant has filed "ultimately meritless claims."

    (b) However, that's not how it works; without bad faith, Appellant's lawsuits are protected by the First Amendment. Therefore, under the strict scrutiny standard, restrictions on future court access should only be imposed after Appellant receives full due process.

    (c) Besides, Appellant's lawsuits were filed out of a good faith belief that he had been wronged, not out of an attempt to harass or extort money.

        i. For starters, Appellant sues for violations of the Americans with Disabilities Act so that he can have a job, have a place to live, and learn a skill so that he can become a productive member of society.

        ii. Appellant always tries to seek the advice of counsel before filing suit, even if he represents himself in the proceedings to save on costs. He will not file suit if an attorney adequately communicates to him the error of his logic. This practice, in and of itself, necessarily refutes any presumption that Appellant is an "abusive" filer.

        iii. Appellant does not simply sue for fun, but will only sue for justice, and even then, only if other, less drastic means have proven ineffective. The testimony of a disinterested witness proves this.

(d) The District Court is attempting to justify its restrictions on precedents whose cases are far worse than anything Appellant has even arguably done.  The fact that there is such dissent among the Supreme Court about the propriety of these prospective restrictions just goes to show that the situations contained in those cases should be the bare minimum standard before sanctions become appropriate.

(e) The sanctions actually imposed against Appellant are based upon a completely idiotic belief that Appellant does not need to eat food in order to survive … that he can apparently survive just on sunlight, like some sort of weird plant-man.

(f) The Complaint should not have been dismissed – let alone with prejudice – without Plaintiff getting an opportunity to amend his Complaint and clarify his positions.

## STANDARD OF REVIEW

1. The Magistrate Judge's belief that a large of quantity of lawsuits filed negates the need to screen each one for frivolousness is reviewable *de novo*.

2. The District Court's finding that Appellant is an abuser of the legal system is reviewable for clear error.

3. The District Court's finding that Appellant has living expenses of $457 per month is reviewable for clear error.

4. The District Court's decision to impose restrictions on Appellant's future court access is reviewable for abuse of discretion.

5. The District Court's decision to restrict Appellant to only filing one new lawsuit every three months is reviewable for abuse of discretion.

6. The District Court's decision to dismiss the lawsuit with prejudice without first giving Appellant the opportunity to clarify his pleading is reviewable for abuse of discretion.

## CONCLUSION

Wherefore, premises considered, Appellant requests that the District Court's order imposing restrictions on Appellant's future court access be vacated, and that the District Court's order dismissing the action on the merits be reversed. So requested this 2nd day of October, 2013.

*/s/ David Stebbins*
David Stebbins
123 W. Ridge St.,
APT D
Harrison, AR 72601
870-204-6516
stebbinsd@yahoo.com